UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
NATIONAL FEDERATION OF THE BLIND OF NEW YORK STATE, INC., and ALBERTA ELIA,

Plaintiffs,

Ind. No. 25-CV-1645 (RER)(LKE)

-against-

THE NEW YORK STATE UNIFIED COURT SYSTEM, and NANCY SUNSHINE, *in her official capacity as County Clerk and Clerk of the Supreme Court and Commissioner of Jurors, County of Kings*,

Defendants.
---------------------------------------------------------------------X

**MEMORANDUM OF LAW ON BEHALF OF THE DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

DAVID NOCENTI
Counsel - Office of Court Administration
Attorney for Defendants
25 Beaver Street
New York, New York 10004
(212) 428-2150

MICHAEL J. SIUDZINSKI
Assistant Deputy Counsel
NIAA C. DANIELS
Assistant Deputy Counsel
of Counsel

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iv

Preliminary Statement ........ 1

Statement of the Facts ........ 1

Background ........ 2

A. Operation of the Grand Jury Courtroom. ........ 3

B. Elia's Qualification to Serve. ........ 4

Legal Background ........ 7

A. New York State Unified Court System ........ 7

B. Hon. Nancy Sunshine ........ 8

C. District Attorney and Grand Jury Proceedings ........ 9

Plaintiffs' Claims and Relief Requested ........ 9

ARGUMENT ........ 10

I. PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST DEFENDANTS. ........ 10

A. Plaintiffs Have Not Been Injured by Defendants ........ 11

B. The Requested Relief as Applied to Elia is Speculative ........ 11

C. NFB Fails to Allege Facts Sufficient to Support "Association" Standing ........ 14

II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE ADA AND THE REHABILITATION ACT ........ 16

III. PLAINTIFFS CANNOT SUSTAIN A CLAIM UNDER THE STATE'S EQUAL PROTECTION CLAUSE ........ 18

IV. THE COURT SHOULD DECLINE TO EXERCISE JURISIDICTION OVER PLAINTIFFS' STATE EQUAL PROTECTION CLAIM. ........ 19

V. PLAINTIFF ELIA CANNOT RECOVER DAMAGES FROM DEFENDANTS UNDER THE ADA OR REHAB ACT ........ 20

A. Emotional Damages are Not Recoverable Under the Rehab Act and the ADA ........ 20

B. Plaintiff Elia Has Failed to Allege Economic or Statutory Damages ........ 20

C. Plaintiff Elia Has Failed to Allege Nominal Damages ........ 21

VI. PLAINTIFFS ARE NOT ENTITLED TO THE DECLARATORY OR INJUNCTIVE RELIEF SOUGHT ........ 22
VII. COMMISSIONER SUNSHINE IS NOT A PROPER PARTY TO THIS ACTION ........ 24
CONCLUSION ........ 25

## TABLE OF AUTHORITIES

### Cases

*Ashland Equities Co. v. Clerk of N.Y. Cnty.*, 110 A.D.2d 60 (1st Dept. 1985).............................. 8
*Bano v. Union Carbide Corp.*, 361 F.3d 696 (2d Cir. 2004)........................................................ 14
*Barnes v. Gorman*, 536 U.S. 181 (2002) ......................................................................... 21
*Bartlett v. N.Y. State Bd. of Law Examiners*, 970 F. Supp. 1094 (S.D.N.Y. 1997) ...................... 21
*Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001).................................... 18
*Bradley v. Fisher*, 80 U.S. 335 (1871)........................................................................... 11
*Coal. of Watershed Towns v. U.S. Env'tal Protection Agency*, 552 F.3d 216 (2d Cir. 2008) ...... 12
*Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562 (2022) ................................. 20, 22
*Demoret v. Zegarelli*, 451 F.3d 140 (2d Cir. 2006) ...................................................... 18
*Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012)................................................................................................. 15
*Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 WL 1751785 (S.D.N.Y. 2003)................................................................................................. 14
*Disabled in Action v. Bd. of Elections*, 752 F.3d 189 (2d Cir. 2014) ........................................... 23
*Doherty v. Bice*, 101 F.4th 169 (2d Cir. 2024) ............................................................. 20, 24
*Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221 (E.D.N.Y. 2015)......... 18
*Fantasia v. Montefiore New Rochelle*, No. 19 CV 11054 (VB), 2022 U.S. Dist. LEXIS 107935 (S.D.N.Y. June 16, 2022) ....................................................................... 22
*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004)....................................................... 18
*Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446 (E.D.N.Y. 2007).......................................25
*Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98 (2d Cir. 2001).......................... 20, 21
*Gallagher v. N.Y. State Bd. of Elections*, 477 F.Supp.3d 19 (S.D.N.Y. 2020).............................25
*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009)......................................................... 16, 25
*Huminski v. Corsones*, 396 F. 3d 53 (2d. Cir. 2004) ..................................................... 11
*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ...................................... 14, 15
*Laws. for Child. v. N.Y. State Off. of Child. & Fam. Servs.*, 218 A.D.3d 913 (3d Dept. 2023) ... 14
*League of Women Voters of Nassau Cnty. v. Bd. of Supervisors*, 737 F.2d 155 (2d Cir. 1984)... 19
*Lener v. Hempstead Pub. Sch.*, 55 F.Supp.3d 267 (E.D.N.Y. 2014). ........................................ 18
*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009)........................................ 20
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................ 11, 15
*Maione v. Zucker*, No. 18-CV-7452, 2020 WL 5751582 (S.D.N.Y. Sept. 25, 2020) ................. 21
*Mental Hygiene Legal Serv. v. Daniels*, 33 N.Y.3d 44 (2019) ............................................ 15
*Myers v. Doherty*, No. 21-3012-cv, 2022 WL 4477050 (2d Cir. Sept. 27, 2022) ....................... 18
*N.Y. Pub. Int. Rsch. Grp. v. Whitman*, 321 F.3d 316 (2d Cir. 2003) ........................................ 10
*Naiman v. N.Y. Univ.*, No. 95 CIV. 6469(LMM), 1997 WL 249970 (S.D.N.Y. May 13, 1997) . 12
*Nat'l Westminster Bank v. State*, 76 N.Y.2d 507 (1990)....................................................... 8
*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ............................................................ 19
*Ne. Fla. Chapter of the Assocd. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993)................................................................................................. 10
*People v. Cruz*, 46 A.D.3d 313 (1st Dept. 2007) ........................................................ 18
*People v. Guay*, 18 N.Y.3d 18 (2011)...................................................................... 18
*People v. Guzman*, 76 N.Y.2d 1 (1990)................................................. 8, 11, 12, 17, 18
*People v. Salazar*, 112 A.D.3d 5 (1st Dept. 2013).......................................................... 18

*Pierson v. Ray*, 386 U.S. 547 (1967) .......... 11
*T.W. v. N.Y. State Bd. of Law Exam'rs*, 996 F.3d 87 (2d Cir. 2021) .......... 16
*Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565 (2d Cir. 2003) .......... 16
*U.S. v. Watson*, 483 F.3d 828 (D.C. Cir. 2007) .......... 18
*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) .......... 19, 20
*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) .......... 14
*Warth v. Seldin*, 422 U.S. 490 (1975) .......... 14
*Winokur v. Off. of Ct. Admin.*, 190 F. Supp. 2d 444 (E.D.N.Y. 2002) .......... 21
*Young v. N.Y.C. Transit Auth.*, 903 F.2d 146 (2d Cir.1990) .......... 20

**Federal Statutes**

28 U.S.C. § 1367 .......... 20
29 U.S.C. § 701 .......... 1, passim
42 U.S.C. § 12117 .......... 21
42 U.S.C. § 1983 .......... 11, 19
42 U.S.C. § 12101 .......... 1, passim
42 U.S.C. § 12133 .......... 21
Federal Court Improvement Act of 1996, Pub. L. No. 104-317, § 309 .......... 11

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1
Fed. R. Civ. P. 19(a)(1)(A) .......... 25

**N.Y. Constitutional Provisions**

N.Y. Const. art. I, § 11 .......... 1, passim
N.Y. Const. art. XIII, § 13 .......... 8
N.Y. Const. art. VI, § 22 .......... 7
N.Y. Const. art. VI, § 23 .......... 7
N.Y. Const. art. VI, § 6 .......... 7, 8
N.Y. Const. art. VI, § 7 .......... 7

**N.Y. State Statutes**

22 NYCRR § 128.5 .......... 2
22 NYCRR § 128.8 .......... 9
22 NYCRR § 202.5 .......... 8
CPL § 190 .......... 9, 13
CPL § 190.25 .......... 3, 9, 23
CPL § 190.30 .......... 4
CPL § 210.30 .......... 4
CPL § 210.35 .......... 4, 13
CPLR art. 78 .......... 7, 17
CPLR § 6501 .......... 8
Jud. L. § 44 .......... 7
Jud. L. § 502 .......... 9
Jud. L. § 510 .......... 9

**County Laws**

N.Y. Cnty. L. § 525 .......... 8
N.Y. Cnty. L. § 904 .......... 8
N.Y. Cnty. L. § 908 .......... 8
N.Y. Cnty. L. § 909 .......... 8, 9
N.Y. Cnty. L. § 918-923 .......... 8

**Other Authorities**

*Grand Jury Handbook*, N.Y. State Unified Ct. Sys., https://nyjuror.gov/pdfs/hb_Grand.pdf, last accessed July 29, 2025 .......... 3
Kings Cnty. Clerk's Off., *Jury Service, If You Have Served on Jury Duty and are still within the good service period*, nycourts.gov, https://ww2.nycourts.gov/courts/2jd/kingsclerk/jury.shtml#pastservice .......... 13
*Questions & Answers (FAQ's)*, nyjuror.gov, https://www.nyjuror.gov/juryQandA.shtml .......... 13
Restatement (Second) of Contracts § 346 .......... 22

## **Preliminary Statement**

Plaintiffs, National Federation of the Blind of New York State, Inc. ("NFB") and Alberta Elia ("Elia"), bring this discrimination action against the New York State Unified Court System ("UCS") and Nancy Sunshine, the County Clerk, Commissioner of Jurors, and Clerk of the Supreme Court, Kings County. Plaintiffs allege three identical claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.* ("Rehab Act"), and the Equal Protection clause of the New York State Constitution, art. 1 § 11 (a) ("EP"), alleging that Defendants discriminated against Elia based on his disability as a blind individual by failing to accommodate him so he could serve as a grand juror. Plaintiffs further allege that Defendants have discriminated against New Yorkers who are blind, particularly members of NFB, based on an allegation that UCS does not have a policy for providing accommodations to jurors who are blind and do not train judges and non-judicial court personnel on providing accommodations. Plaintiffs seek declaratory judgments, injunctive relief, and an unspecified amount in compensatory damages.

This memorandum of law is submitted on behalf of Defendants in support of their motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12 (b) (6) on the grounds that Plaintiffs lack standing and are not entitled to the relief requested, the Defendants cannot provide the relief requested, and Plaintiffs have failed to state an ADA, Rehab Act, or EP claim for discrimination.

## **Statement of the Facts**

For purposes of this motion only the well-pleaded facts of the Complaint ("Compl."), filed March 25, 2025, may be considered. The Complaint numbers 15 pages, with the factual allegations detailing Plaintiff Elia's experience before the New York State Supreme Court-Criminal Term, Kings County, as a grand juror empaneled to review and deliberate on criminal actions. The

relevant and non-conclusory factual allegations are repeated and summarized below. Additionally, the Court may also take judicial notice of the Declaration of Michael J. Siudzinski ("Siudzinski Decl.") and the exhibit annexed thereto that have been referenced in the Complaint as integral to the pleadings or incorporated in the complaint by reference.

**<u>Background</u>**

Elia is an individual with a disability, specifically blindness for which he uses a guide dog for mobility, a screen reader for navigating his computer and phone, and other assistive technology including phone software applications that operate with Artificial Intelligence ("AI"), to describe "things" by pointing the phone at objects and visuals. *See* Compl. ¶ 3[1], s*ee also* Exhibit ("Ex."), 1 p 3, lines 1 – 20. Elia does not read brail but does asks other individuals to assist him by describing information to him as he finds doing so is more reliable than using the assistive technology. Ex. 1 p 3, lines 1 – 20.

On October 4, 2024, Elia, a Kings County resident, went to Kings County Supreme Court, Criminal Term located at 320 Jay Street, Brooklyn, NY, in response to a summons for grand jury service. Compl. ¶ 5. Upon arrival, Elia received assistance from the Commissioner of Jurors staff to complete the juror card provided to all prospective jurors during grand juror orientation / panel screening. Pursuant to section 128.5 (e) of the New York Codes, Rules and Regulations, the Commissioner of Jurors shall note on the juror's card whether a prospective juror is qualified to serve based on his or her completed questionnaire. Elia was determined qualified as a prospective juror and continued to the next phase of screening for Grand Jury selection where he was sworn in

[1] All further citations to the complaint are abbreviated to "¶," for the relevant paragraph(s).

and empaneled as a grand juror by a judge[2]. Compl. ¶ 6 , *see also* Grand Jury Handbook[3]. On October 4, 2024, Elia was assigned to Jury A , Term 11 and served through October 9, 2024, the date his request to be discharged from service was granted. *See* Ex. 1 p 2, lines 1 – 3, *see also* Ex. 2, p 6 – 8.

**A. Operation of the Grand Jury Courtroom.**

Once grand jurors are sworn and empaneled, their service is managed by the local District Attorney's Office / Prosecuting Agency with limited involvement from the judiciary. In Kings County, grand jurors serve in the Kings County Supreme Court, Criminal Term courthouse located at 320 Jay Street. There are designated floors for the grand jury that are accessible only to Kings County District Attorney staff members, Grand Jury Wardens, authorized law enforcement, and subpoenaed witnesses. [4] The floor is secured by Grand Jury Wardens to maintain the secrecy and integrity of the proceedings, (CPL § 190.25 [3]), and operates under the province and control of the Kings County District Attorney's Office ("KCDA"). UCS Wardens assist KCDA in a limited capacity with logistical measures including the movement of incarcerated individuals to and from the courtroom, the scheduling of grand jury presentments, confirming the daily attendance of grand jurors, and scheduling relief and lunch breaks for the jurors.

Each Kings County grand jury consists of twenty – three (23) jurors and is separated by letter and term. *Id.* Each grand jury must have present at least sixteen of its members during presentments. *See* CPL § 190.25. Presenting Assistant District Attorneys control the type of evidence they choose to present to the grand jury e.g., videos, photographs, documents, witness

---

2 In Kings County Criminal Term, the Supreme Court judges rotate weekly to cover the Miscellaneous Court Part which handles various types of cases that do not fall under the traditional categories of criminal matters, i.e. swearing in empaneled grand jurors, hearing matters regard grand jury presentments and grand juror qualification.

3 Grand Jury Handbook, https://nyjuror.gov/pdfs/hb_Grand.pdf , last accessed July 29, 2025.

4 Supra. at footnote, ("FN"), 3.

testimony, however, the Assistant District Attorney is bound by New York State's statutory and common law rules of evidence. *See* CPL §§ 190.30, 210.30 and  210.35 (5). The prosecutor may use any equipment already installed in the courtroom, e.g. projector screens, microphones etc. However, the KCDA has media and technical staff assigned to the designated grand jury floors with their agency's equipment, i.e. media carts, speakers, projectors, dvd players, laptops, pointers etc., to allow the attorneys to present the evidence they deem necessary to the jury.

**B. <u>Elia's Qualification to Serve.</u>**

On October 7, 2024, Assistant District Attorney Jane Kim ("ADA Kim"), appeared before the Honorable Phyllis Chu, the presiding Justice over miscellaneous grand jury matters. Ex. 1. ADA Kim made an oral application to the court to inquire as to Elia's qualification to deliberate on cases that rely on videos and photographs. *Id*. As a result, Elia was called to appear before the court with ADA Kim present. *Id*. The court conducted voir dire of Elia regarding the extent of his disability and what, if any, technological equipment Elia uses to assist him to see or "digest" things that are presented to him in visual form. *Id.* at p 2 – 3. Elia informed the judge that due to his blindness, he relies on AI technology, however, finds a person providing a description is more reliable. Elia also informed the judge that, as an attorney "recognizing the importance of keeping everything secret", he did not want to use the AI assistive technology because the program would send the visual images / evidence to the internet in order to describe it to him. *Id*. Elia requested that the presenting prosecutors have witnesses narrate the video and photographic evidence to him during their presentments and suggested fellow jurors could describe the evidence to him. *Id*. at 3 – 8. ADA Kim noted for the record that Elia's suggested accommodation was legally impermissible. *Id*. at 8.

Justice Chu agreed with the prosecutor's concerns and told Elia that the prosecutors are not

permitted to narrate the visual evidence to him because the photos and videos "speak for themselves" and Elia must assess the evidence on his own. *Id*. 3 – 9. Justice Chu reminded Elia that as a grand juror and finder of fact, it is up to him to decide what relevance and importance to place on the evidence presented and determined that even if the evidence were to be described to him, he would still be an unable to make a credibility assessment as to whether the visual evidence depicts what has been described. *Id*.

Based on Elia's representation that a description of the visual evidence provided by another individual is the only accommodation that would assist him in assessing the evidence in the grand jury, ADA Kim moved by oral application to have his involvement in grand jury deliberations and voting limited to cases that do not rely on visual evidence. *Id*. at 10 – 11. Justice Chu granted ADA Kim's request based on the record and ruled that the KCDA may disqualify individuals on cases that relied on visual evidence. *Id*. at 13. Justice Chu further ruled that if Elia should disagree with the presenting prosecutor on whether he should, or should not be disqualified, he may return to the court for the judge to make "an individual determination for each case". *Id*.

The next day, ADA Kim appeared before the Justice Chu and made an application for the court to approve a limiting instruction that prosecutors intended to read to all grand jurors. The instruction read as follows"

> "Only those jurors who were present and who heard the evidence presented and had an opportunity to evaluate and review all of the evidence, including any video and photographic evidence on such and such dates are qualified to deliberate and vote on the charges I am about to submit to you." *Id*. at 3 lines 15 – 20.

ADA Kim informed the court that the purpose of the limited instruction was to put Elia on notice, without singling him out, and signal to him that the corresponding case relies on visual evidence and therefore, he should not deliberate or vote. *Id*. at 2 – 3. Justice Chu determined the

instruction was "fine" and requested Elia to appear before the court to first advise him of the instruction. Ex. 2, p 2. Once before the court, Elia voiced his concern about being "restricted", in his service, and informed the judge that he disagreed with her ruling and requested the judge allow the grand jury foreperson to describe all visual evidence to him. *Id*. at 4 – 5.

Justice Chu made the following determination:

> "…[O]ther jurors can't tell you what they see. You have to make your own determination as to what the physical evidence represents. They can't tell you what it is that they are seeing because they can have an interpretation that's different than yours, just like all of the other jurors can have a different interpretation. You have to make your own determination. So a foreperson or any other person in the jury can't describe for you what it is that they are absorbing or they are appreciating from the physical evidence being presented." *Id*. at 5, lines 12 – 22.

Justice Chu distinguished an American Sign Language ("ASL") interpreter accommodating a hearing disabled individual from a blind individual's need to have visuals described. *Id*. at 6. Specifically, the judge determined that:

> "[A]n official hearing-impaired interpreter…would be present to interpret the spoken word verbatim. Looking at something that is a physical piece of evidence such as video or such as photographs, there needs to be an evaluation that's done visually as well as comparing and contrasting that to whatever testimony that's given in connection with that piece of evidence. [*Id*., lines 4 – 12]….
>
> If a particular case has heavy physical evidence that's being presented, there are certain things that you cannot evaluate because you can't see what it is that's being presented to you and you can't allow other jurors to describe that to you." *Id*. at 7, lines 3 – 7.

The judge informed Elia that she was not disqualifying him from service and told him that "[they] we would like [him] to participate in the proceedings". *Id*. at 6. However, Justice Chu reiterated her ruling that Elia "can participate, [he] can listen, [he] can be present during all of the presentations. It's just that [he] would be limited in the number of cases that [he] could vote on…

[specifically, cases] that have heavy (*sic*) either surveillance, body-worn camera or physical evidence such as photographs." *Id*. at 7, lines 10 – 17.

Elia was dissatisfied with Justice Chu's ruling and asked to be disqualified. *Id.* at 7 – 8. The judge granted his request, and he was excused from service. *Id*.

There are no allegations or evidence that Elia took part in any further proceedings at the courthouse or in relation to his juror summons. Furthermore, there are no allegations or evidence that he will be summoned to serve as a grand juror or juror at any point in the future apart from his residency in Kings County.

**Legal Background**

**A. New York State Unified Court System**

The UCS is the judicial branch of New York State established by the New York State constitution, Article VI. Therein, the role of UCS judges, including Supreme Court Justices, are described. (NY Const., art. VI § 6 [c]). The jurisdiction, authority, and independence of Supreme Court Justices, including Justice Chu, is established by the state constitution. NY Const., art. VI § 7. Justices are not employees of UCS and UCS does not hire Justices or remove them from service. UCS does not dictate the terms of their employment, control their work, or otherwise direct them how to decide a case. Judicial decisions are only subject to appeal or, in limited circumstances, a special proceeding under Article 78 of the Civil Practice Law and Rules ("CPLR"). Justices are subject to discipline only upon review and recommendation by the New York State Commission on Judicial Conduct and a vote of the Justices of the New York Court of Appeals, (*see* NY Const., art. VI § 22; Jud. L. § 44 [7] – [10]), or by the legislature (*see* NY Const., art. VI § 23 [a]).

As described by the New York Court of Appeals, whether a juror is qualified to perform

such duties is solely within the discretion of the trial court.

> "As with most juror qualification questions, the determination whether a hearing-impaired person can provide reasonable jury service in a given case must be left largely to the discretion of the trial court, which can question and observe the prospective juror and the interpreter during the voir dire."

*People v. Guzman*, 76 N.Y.2d 1, 5 (1990) (citations omitted).

**B. <u>Hon. Nancy Sunshine</u>**

Within the five boroughs/counties of NYC, the County Clerks[5] are appointed by the Appellate Division, First and Second Department, (*see* NY Const., art. 13 § 13 [a]; NY Cty L § 908), and also serve as the Clerk of the Supreme Court[6], (NY Const., art. VI § 6 [e]; NY Cty L §§ 525, 909) and the Commissioner of Jurors (*Id.* at § 909). Accordingly, Nancy Sunshine serves as the County Clerk, Clerk of the Supreme Court, and the Commissioner of Jurors for Kings County, but her duties and her authority for each role are derived from different statutes.

The role of the *Clerk of the Supreme Court* is not to be confused with the title of Chief Clerk for the Supreme Court who is the highest ranking non-judicial UCS official in the courthouse and manages the operations of the courthouse.[7] The Chief Clerk executes their duties independent of any oversight or direction from the *Clerk of the Supreme Court.*

---

[5] The role of the County Clerk is limited to acting as a repository for certain county records and court records. (See NY Cty L § 904, 918-923; 22 NYCRR § 202.5, [Uniform Rules of NY State Trial Courts]). Specifically, the County Clerk provides "all books, files and other necessary equipment for the filing, recording and depositing of documents, maps, papers in actions and special proceedings of both civil and criminal nature, judgment and lien dockets and books for the indexing of the same as directed or authorized by law." (*See* NY CLS County § 525).

[6] Pursuant to city and county law, the County Clerks within New York City shall also serve as the Clerk of the Supreme Court within their respective county. (*Id.; see also* NY Cty L § 909). As such, the Clerk of the Supreme Court is the custodian of the records filed within her respective county and is responsible for indexing and docketing matters initiated and pending within the county she serves. (*See* CPLR § 6501; *see also Ashland Equities Co. v. Clerk of New York County*, 110 A.D.2d 60, 493 [1st Dept. 1985]; *see generally* National Westminster Bank, USA v. State, 76 N.Y.2d 507 [1990]).

[7] Chief Clerks within New York City are appointed pursuant to the authority of the UCS Chief Administrative Judge and serve in a confidential capacity. They are responsible for managing court operations related to case processing, budget and payroll preparation, personnel management and employee relations, deployment of nonjudicial personnel, and coordination with non-court agencies, and for performing other related duties. Additionally, they are responsible for the receipt, accounting, and disbursing of fines, fees, bail and other public or custodial funds.

The *Commissioner of Jurors* duties are limited to "select, draw, summon and empanel grand and petit jurors" and any necessary authority to carry out such duties. (NY Cty L § 909; Jud. L. § 502 [d] ). The *Commissioner* plays no role in deciding juror eligibility apart from screening summoned jurors pursuant to the qualification requirements set forth in Jud. L. § 510 (residency, citizenship, age, no felony conviction and ability to understand and communicate in English). The Commissioner does not determine whether a summoned juror will be sworn or seated and is not involved with that phase of empaneling a prospective juror. Lastly, the Commissioner is not responsible for providing reasonable accommodations to grand jurors after being sworn in but may provide assistance to *summoned* grand jurors during orientation (before being sworn). (*See*, *e.g.*, Compl. ¶ 6).

**C. <u>District Attorney and Grand Jury Proceedings</u>**

The authority and responsibilities of grand juries are outlined in NY Criminal Procedure Law Section 190. As a preliminary matter, '[t]he grand jury is the exclusive judge of the facts with respect to any matter before it. (CPL § 190.25 [5]). No other person is allowed in the room with the grand jury during its deliberations, (*see id.* at 190.25 [3]), with the exception of a sign language interpreter for deaf or hearing-impaired grand jurors, which is specifically the responsibility of the prosecutor. (*Id.* at 190.25 [3-a]). No exceptions are made to provide assistance or interpreters for grand jurors who are blind.

Once selected or sworn in, a juror may only be discharged by a judge or justice, not by a County Clerk, Clerk of the Supreme Court, Commissioner of Jurors or UCS official. *See* 22 NYCRR § 128.8.

**<u>Plaintiffs' Claims and Relief Requested</u>**

Plaintiffs jointly assert three causes of action under the ADA, Rehab Act, and EP, all based on the same factual allegations presented in the Complaint, specifically, Elia's experience as a grand juror, described above. The Complaint is devoid of any allegations concerning anyone else. Elia's claims rely on four theories of liability: Defendants (i) failed to allow him and other blind individuals to serve as jurors/grand jurors; (ii) failed to accommodate him with assistive technology or aids; (iii) failed to have a policy or procedures to accommodate blind jurors; and (iv) discriminated against him by requiring him to serve but not participate in deliberations. (*See*, Compl. ¶¶ 43, 56, 660. NFB's claims are premised on identical theories. *See* Compl. ¶¶ 44, 57, 66.

Plaintiffs seek the following relief: (i) declaratory judgments that Defendants are in violation of the ADA, Rehab Act, and state EP clause; (ii) permanent injunctive relief directing Defendants to comply with the ADA and Rehab by making "jury service programs . . . readily accessible and usable," to modify policies, practices, and procedures, and to provide auxiliary aides and services, (iii) an award of damages in an amount to be determined by proof, and (iv) attorneys' fees, costs and litigation expenses.

## ARGUMENT

### I. PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST DEFENDANTS.

In a federal action, standing must be resolved as a threshold matter and the court has an independent obligation to ensure that standing exists. (*See Northeastern Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663-64 [1993]; *N.Y. Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 324-25 [2d Cir. 2003]). At a minimum, in order to establish standing, plaintiffs must show three elements: (1) Injury: Injury in fact, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not

conjectural or hypothetical; (2) Causation: A causal connection between the injury and the challenged conduct; (3) Redressability: It must be likely, as opposed to merely speculative, that the injury complained of will be redressed by a favorable decision. (*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 [1992]). Plaintiffs have failed to allege any personal injury "fairly traceable to the [defendants'] allegedly unlawful conduct…" (*See Allen v. Wright*, 468 U.S. 737, 751 [1984]).

**A. Plaintiffs Have Not Been Injured by Defendants**

Here, the Plaintiffs cannot show standing sufficient to support a claim against UCS or Nancy Sunshine ("Commissioner Sunshine"); their grievance stems from Justice Chu's decision to grant the ADA's request to bar Elia from deliberating on criminal matters in which there was substantial visual evidence.[8] *See* Compl., *passim*. Plaintiffs as complainants, however, do not have a right to a particular decision or order by a State Court judge and consequently cannot claim an injury from an adverse determination. The complaint fails to set forth any actual injury or injury in fact. Neither do Plaintiffs allege facts sufficient to show that there is widespread, systemic discrimination by UCS, state judges and its non-judicial staff against individuals who are blind.

**B. The Requested Relief as Applied to Elia is Speculative**

As a second matter, Plaintiffs' alleged injuries cannot be redressed by a favorable opinion by the Court. Plaintiffs seeks widespread injunctive relief from Defendants, none of which would have altered the outcome below. "Redressability is the non-speculative likelihood that the injury

[8] Plaintiffs presumably did not name Justice Chu as a defendant because they likely know that she would be shielded from suit under judicial immunity, both for damages and injunctive relief. *See Pierson v. Ray*, 386 U.S. 547, 553-554 (1967), *citing Bradley v. Fisher*, 80 U.S. 335 (1871). Pursuant to the Federal Court Improvement Act of 1996, which amended 42 U.S.C. § 1983, "in any action brought against a judicial office for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *See* 42 U.S.C. § 1983; *Huminski v. Corsones*, 396 F. 3d 53, 74 (2d. Cir. 2004). Instead, Plaintiffs seek to hold UCS and Commissioner Sunshine liable for Judge Chu's discretionary actions. *See People v. Guzman* 76 N.Y.2d at 5.

can be remedied by the requested relief. It must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." (*Coalition of Watershed Towns v. U.S. Environmental Protection Agency*, 552 F.3d 216, 218 [2d Cir. 2008] [citations omitted]; *see also Naiman v. New York University*, 1997 WL 249970, at *4 [S.D.N.Y. May 13, 1997]).

Assuming, *arguendo*, that this Court issued a declaratory judgment and directed UCS to enact a different reasonable accommodation policy for prospective jurors,[9] neither UCS nor Commissioner Sunshine can direct or compel the District Attorney's Office to use the policy or a State judge to grant a reasonable accommodation that affects the rights of a party. (*See Guzman*, 76 N.Y.2d at 5; *see also* Ex. 3, p. 3 "What type of accommodations may be ordered by a judge and what types made be made administratively?"). In other words, there is no administrative relief that can be provided by UCS or Commissioner Sunshine that would have changed the outcome here or in any other case in which a juror/grand juror is either dismissed or barred from deliberating on a case due to a disability that prevents such individuals from reviewing evidence at the potential detriment of a defendant; such decisions are made by judges only.

It is uncontested that the purpose of jury service and deliberation is for each juror to independently assess the evidence presented and decide as a jury an outcome. To allow any individual with the inability to review and judge evidence in the same capacity as other jurors/grand jurors is a violation of the rights of the parties in the action or proceeding and not allowed. (*See* Ex. 3, affixed UCS ADA guide)[10]. As Justice Chu determined, (*see* Exs. 1 & 2), it

---

[9] As stated in the Complaint, Plaintiffs are aware that UCS has an existing policy. Furthermore, UCS courts have adaptive technologies. Elia, however, has not demonstrated that there is any adaptive technology that would allow him to experience visual evidence as a grand juror on equal footing with other grand jurors.

[10] On July 24, 2024, Andrew Bizer, Esq, of Bizer & DeReus Law Firm as retained counsel for the NFB, submitted FOIL requests to UCS seeking records concerning "policies and procedures with respect to adaptive technology to assist blind jurors." In response, on August 12, 2024, UCS provided a copy of its ADA policy for court users, which discusses the availability of technology to assist individuals with disabilities, including blind individuals.

is legally impermissible for grand jurors to have other jurors, members of the DA's office, or court personnel describe or interpret visual evidence for them. (*See* also CPL § 190, *et seq.*). Because the rules of evidence apply to grand jury proceedings, prosecutors are not permitted to testify by describing their assessment of the evidence nor can they or any other witness narrate to the jurors. Furthermore, the prosecutor has the duty to ensure the integrity of the grand jury is not impaired as the secret proceeding is under their exclusive control. (*Id.*) Failing to uphold this duty can consequently lead to a defendant formally charged and / or the inspection and dismissal of the People's indictment based on an impaired grand jury/ improper presentment. (CPL § 210.35).

Furthermore, Elia does not have standing to pursue a claim for injunctive relief that will specifically redress the allegation that he will be denied a reasonable accommodation in the future. Elia alleges that he will continue to be a resident of Kings County and therefore there is a likelihood that he will serve again and face the same injury. However, whether he (i) is ever summoned for jury service again,[11] (ii) is still eligible to serve, (iii) is not dismissed during *voir dire*, and (iv) is a prospective juror for a case involving visual evidence, *are all entirely speculative circumstances*. Consequently, Plaintiffs' claims are speculative and cannot be redressed by a favorable opinion by the Court. Therefore, Plaintiffs do not have standing and the complaint must be dismissed as a matter of law.

---

On October 14, 2024, Attorney Bizer and Eve Hill Esq., of Brown Goldstein and Levy, an attorney of record in this action, commenced a legal action on behalf of NFB and Emeline Lekrout in the Southern District of New York, (*Lekrout v. UCS*, 24-cv-07789-MK).

[11] After appearing and serving jury duty in a New York State court, even if dismissed, an individual is not eligible to serve again for at least six years, (or at least eight years in Kings County), and there is no guarantee that an individual will be summoned again even after that time because federal court service resets the time. (*See* https://www.nyjuror.gov/juryQandA.shtml , *last accessed* July 30, 2025 [Q. "If I serve as a juror in federal court do I still have to serve in state court?" Indeed, it is possible that Plaintiff could repeatedly serve as a juror in federal court and never be eligible to serve in state court again] ; *see also* https://ww2.nycourts.gov/courts/2jd/kingsclerk/jury.shtml#pastservice , *last accessed July 30, 2025*, [Overview…"You are not qualified to serve as a juror… If You Have Served on Jury Duty Within the Past 8 Years"]).

**C. NFB Fails to Allege Facts Sufficient to Support "Association" Standing**

Organizations can demonstrate standing either through one of its members (also known as "association" standing) or harm directly to the organization itself. (*See Lawyers for Children v. New York State Office of Children and Family Services*, 218 A.D.3d 913 [3d Dept. 2023]). NFB does not allege that it has been directly harmed, instead relying on "association" standing of its alleged members.

An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right (including having a particularized injury-in-fact, not speculative); (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. (*See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 [1977]). Association standing carves only a narrow exception from the ordinary rule that a litigant "must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties," (*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc*., 454 U.S. 464, 474 *quoting*, *Warth v. Seldin*, 422 U.S. 490, 499 [1975]). Association standing cannot be sustained where the claims rely on the participation of any particular member, such as here where this action is wholly reliant on Elia's limited experience as a grand juror. (*See Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 [2d Cir. 2004]). Indeed, where the entity plaintiff asserting association standing merely repeats the same claims and seeks the same relief as the individually named plaintiff, courts will dismiss the entity plaintiff. (*See, e.g.*, *Disabled in Action of Metropolitan New York v. Trump Intern. Hotel & Tower*, 2003 WL 1751785, at 10 [S.D.N.Y. Apr. 2, 2003] [dismissing *Disabled In Action* as a party

when the individually-named plaintiffs were present because "there is no reason for an organization to assert their rights for them."]).

Furthermore, an organization cannot simply state that it has "members" in order to meet the requirements for association standing. Indeed, mere advocacy on behalf of marginalized groups, particularly individuals with disabilities, is insufficient for association standing. A complaint must demonstrate through allegations certain indicia of membership, which are missing here. Specifically, there are no allegations establishing that NFB's purported members "have the power to elect its directors, make budget decisions, or influence [its] activities or litigation strategies" or participate in setting goals, further its mission, or communicate with NFB's board members and officials; no allegations or evidence concerning its board of directors and advisors; no allegations or evidence that this litigation is germane to its purposes and mission, much less that it notified its members and constituents that it had commenced this action on their behalf. (*See Disability Advocs., Inc. v. New York Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 158–59 [2d Cir. 2012], *citing Lujan*, 504 U.S. at 561 [finding that plaintiff therein, a well-known organization with a mission of supporting the rights of individuals with disabilities, did not have association standing to pursue litigation intended to benefit such individuals]; s*ee also Mental Hygiene Legal Service v. Daniels*, 33 N.Y.3d 44, 53, n.4 [2019] [discussing the indicia of membership, *citing Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 344 – 345 [1977]); *Disabled in Action*, 2003 WL 1751785, [dismissing entity Disable In Action because its claims were identical to the individually-named plaintiffs]).

NFB is attempting to assert standing based on its role in helping New Yorkers who are blind. Their advocacy work, however, does not make individuals "members" of NFB solely based

on their blindness.  The complaint fails to allege or demonstrate, that it has members that have a standing to sue.

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE ADA AND THE REHABILITATION ACT

Under both the ADA and Rehab Act, a plaintiff may demonstrate disability discrimination as: (i) intentional discrimination; (ii) disparate impact; or (iii) failure to accommodate. (*See Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 [2d Cir. 2003] [*superseded by statute on other grounds*]). Based on the allegations in the complaint, Plaintiffs appear to allege failure to accommodate claims. In addition to the fact that NFB does not have standing, and the Defendants cannot provide the relief requested, failure to accommodate claims cannot be premised on speculative facts about systemic discrimination of unnamed individuals. Furthermore, NFB is not needed to prosecute Elia's failure to accommodate claim. (*See Disabled in Action*, 2003 WL 1751785, at 10).

To prevail on a claim for disability discrimination under the ADA or the Rehab Act, plaintiff must demonstrate (1) that he is a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. (*See Harris v. Mills*, 572 F.3d 66, 73-74 [2d Cir. 2009]). For purposes of this motion, Defendants do not dispute that Elia is a qualified individual with a disability and that UCS is subject to Title II of the ADA.[12]

[12] There is a factual question as to whether the New York State Supreme Court-Criminal Term receives federal funding for purposes of being subject to the Rehab Act.  (*See T.W. v. New York State Bd. of Law Exam'rs*, 996 F.3d 87, 95-101 [2d Cir. 2021]).  Regardless, Plaintiffs' Rehab Act claim is analyzed and may be dismissed for the same reasons as the ADA claim.

Plaintiffs, however, fail to allege facts sufficient to support a claim under the ADA or Rehab Act. Defendants were not involved nor responsible for the limitations placed on Elia in the grand jury; the ruling was within the discretion of the Justice Chu and under the purview of KCDA. Elia also fails to allege facts sufficient to demonstrate he was wrongfully disqualified. In contrast, the transcript shows that he himself was solely responsible for his dismissal from grand jury duty after he was already sworn in.

In contrast, it was the ADA who made an application to bar Elia from deliberating *only in cases with visual evidence*, and Justice Chu, who is not an employee of UCS, not named in this lawsuit, and whose judicial orders may only be challenged through an appeal or pursuant to CPLR Article 78, was inclined to grant the prosecutor's motion. Ex. 2. It was Elia himself, who chose to be dismissed from grand juror duty. *Id*. at 6 – 8. It is also clear Justice Chu explored whether a reasonable accommodation could be provided that would adequately assist Elia to review the visual evidence, particularly pictures and videos. (*See id.)* Whether a juror is qualified to be seated and deliberate on a case is within the sole discretion of the presiding judge based on the facts presented. *(See Guzman* 76 N.Y.2d at 5). To the extent another juror or third party could describe the visual evidence to Elia, that type of reasonable accommodation would introduce bias by the other juror(s) or third party. "[A] juror must be able to understand all of the evidence presented, evaluate that evidence in a rational manner, communicate effectively with the other jurors during deliberations, and comprehend the applicable legal principles, as instructed by the court." (*Id.*)

There is no dispute herein that Elia is completely blind and cannot view photos or videos but must have them described either by other individuals or technology. Such interpretations may be acceptable in non-legal circumstances, but there is no substitute for directly viewing evidence as a juror. Accordingly, the reasonable accommodation provided to Elia, (the ability to deliberate

and vote on cases that did not have substantial visual evidence), was appropriate and would ensure criminal defendants' fundamental rights. (*See id.)*. To allow otherwise would prejudice the defendants in violation of their fundamental rights.[13]

Furthermore, there are no allegations or evidence that UCS officials or Commissioner Sunshine had any involvement in Justice Chu's decision. Indeed, there are no allegations at all about UCS employees or Commissioner Sunshine, other than speculative and meritless allegations that UCS does not have a reasonable accommodation policy and is not training judges and its non-judicial staff. Furthermore, Plaintiffs' allegations that Defendants are systemically violating the rights of individuals who are blind is speculative and is not the basis for a claim under either the ADA or Rehab Act.

## III. PLAINTIFFS CANNOT SUSTAIN A CLAIM UNDER THE STATE'S EQUAL PROTECTION CLAUSE

At the pleading stage, the requirements for a state EP claim are the same as those for a federal EP Claim. (*See People v. Salazar*, 112 A.D.3d 5, 9 [1st Dept. 2013]; *see also Myers v. Doherty*, 2022 WL 4477050, at *1 [2d Cir. Sept. 27, 2022] *citing*, *Demoret v. Zegarelli*, 451 F.3d 140, 149 [2d Cir. 2006]; *Feingold v. New York*, 366 F.3d 138, 159 [2d Cir. 2004]).

The federal EP clause does not cover disability discrimination claims. (*See Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 367–68 [2001]; *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 235–37 [E.D.N.Y. 2015]; *see also* Lener v. Hempstead Pub. Sch., 55 F.Supp.3d 267, 281 [E.D.N.Y. Sept. 23, 2014]).

---

13 It is unclear from Plaintiffs' allegations what, if any, alternative reasonable accommodation could have been provided to Elia and he failed to identify a reasonable accommodation to Justice Chu at the time of her inquiry that would have allowed him to view evidence necessary to preserve the criminal defendant's fundamental rights. It is undisputed that it is well within the trial court's discretion to dismiss a juror based on a finding that there is no reasonable accommodation that can be provided that will allow the prospective juror to serve on an equal footing with the other jurors. (*See U.S. v. Watson*, 483 F.3d 828, 833 [D.C. Cir. 2007]; *People v. Guay*, 18 N.Y.3d 18, 22 [2011]; *People v. Guzman*, 76 N.Y.2d 1, 10 [1990]; *People v. Cruz*, 46 A.D.3d 313, 314 [1st Dept. 2007]). This is particularly true here where Elia could not view photos and videos presented to the grand jury. (*See Watson*, 483 F.3d at 829-35).

Prior to January 1, 2025, the state EP clause did not include individuals with disabilities as a protected class. Accordingly, Elia's claims based on his experience as a grand juror in October 2024, cannot support a claim under the state EP clause because it predates the effective change of the state EP clause.

NFB's claims are premised on association standing on behalf of its purported members as individuals with blindness, not a direct injury to the organization. An organization cannot use association standing to assert the rights of its alleged members in cases brought pursuant to 42 U.S.C. § 1983 because the rights that § 1983 secures (*i.e.* equal protection, due process, expression, etc.), are "personal to those purportedly injured." (*See Nnebe v. Daus*, 644 F.3d 147, 156 [2d Cir. 2011]; *see also League of Women Voters of Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 [2d Cir. 1984]). The rights accorded under the state EP clause are also "personal" to each individual and there is no basis in statute, regulation, or caselaw to suggest that an organization can allege claims under the New York State constitution on behalf of its members. Accordingly, NFB's claim under the state EP clause is not viable and should be dismissed.

## IV. THE COURT SHOULD DECLINE TO EXERCISE JURISIDICTION OVER PLAINTIFFS' STATE EQUAL PROTECTION CLAIM.

To the extent that the Court dismisses Plaintiffs' ADA and Rehab Act claims, but does not dismiss Plaintiffs' EP claim, the Court should decline to exercise jurisdiction over said claim. As demonstrated above, this action and Plaintiffs' claims should be dismissed because they do not have standing, the Defendants cannot provide the requested relief, and because Plaintiffs have failed to allege facts sufficient to support their claims. In the alternative, if the Court chooses to dismiss Plaintiffs' ADA and Rehab Act claims the Court should decline to entertain the remaining claims on the basis that it lacks jurisdiction. (*See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 [1966] ["Certainly, if the federal claims are dismissed before trial, even though not

insubstantial in a jurisdictional sense, the state claims should be dismissed as well."]). The Second Circuit has also stated that "pendent jurisdiction should not be exercised merely because 'the exercise of such judicial power is desirable or expedient." (*Young v. New York City Transit Auth.*, 903 F.2d 146, 164 (2d Cir.1990). 28 U.S.C. § 1367 [c] [3], codifies the principle articulated in *Gibbs* that if the federal claim is defeated, the state law claims should be dismissed). Here, Plaintiffs have failed to state viable federal claims and thus the state EP claim should be dismissed.

## V. PLAINTIFF ELIA CANNOT RECOVER DAMAGES FROM DEFENDANTS UNDER THE ADA OR REHAB ACT

Elia seeks to recover emotional, "nominal" economic, and "statutory" damages stemming from Defendants' alleged discriminatory acts. Even assuming that Plaintiffs have sufficiently pleaded an ADA or Rehab Act claim, they cannot obtain damages from Defendants.

### A. Emotional Damages are Not Recoverable Under the Rehab Act and the ADA

In 2022, the Supreme Court determined that emotional damages are not available for claims brought under the Rehab Act. (*See Cummings v. Premier Rehab Keller, P.L.L.C.,* 142 S.Ct. 1562, 1571-76 [2022]). Recently, the Second Circuit Court of Appeals found that emotional damages are unavailable under Title II of the ADA as well. (*See Doherty v. Bice*, 101 F.4th 169, 173-74 [2d Cir. 2024]). Accordingly, Elia cannot recover emotional damages in this action.[14]

### B. Plaintiff Elia Has Failed to Allege Economic or Statutory Damages

Elia seeks "damages in an amount to be determined by proof", but fails to allege what, if any damages he has sustained. The analysis concerning recovery of economic damages under Title II of the ADA and the Rehab Act is the same. (*See Garcia v. State Univ. of N.Y. Health Scis.*

[14] Previously, to obtain compensatory damages, a plaintiff would have to show discriminatory intent or deliberate indifference on the part of the defendants. (*See* Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 [2d Cir. 2009]). There are no allegations to demonstrate discriminatory intent or deliberate indifference here.

*Ctr*., 280 F.3d 98, 110-11 [2d Cir. 2001] [finding that Title II incorporates the "remedial scheme" of the Rehab Act, which follows Title VI of the Civil Rights Act of 1964]; 42 U.S.C. 12133).[15]

Title I of the ADA, in contrast to Title II, specifically provides for monetary recovery such as lost wages and benefits. (*See Garcia*, 280 F.3d at n.1; 42 U.S.C. § 12117 [a], (referencing the remedies available under Title VII). Recovery of economic damages under Title II is limited to non-speculative, out-of-pocket damages. (*See, e.g.*, *Bartlett v. New York State Bd. of Law Examiners*, 970 F. Supp. 1094, 1147-52 [S.D.N.Y. July 3, 1997] [finding that plaintiff's loss of salary from future employment stemming from the denial of her request for a reasonable accommodation to take the Bar exam was too speculative; granting only "incurred costs" from taking the exam]; s*ee also Maione v. Zucker*, 2020 WL 5751582 [S.D.N.Y. Sept. 25, 2020] [seeking out-of-pocket expenses for failure to accommodate under ADA and other statutes]).

Here, Elia does not allege that he has suffered economic or statutory damages and fails to plead any quantifiable loss due to lost wages, reputational harm to his career, or other financial losses from the underlying circumstances during grand jury service. Elia's economic damages under Title II should be limited to actual expenses incurred, which he does not allege any.

Lastly, Elia fails to articulate or specify any "statutory" damages he is entitled to. To the extent Elia may prevail on a Title II or Rehab Act claims, he has not demonstrated economic losses that he can recover or "statutory" damages. Given that emotional damages are not allowed under the ADA or Rehab Act, Elia claims for damages must be dismissed. There are no damages that Elia—or NFB—can obtain under the ADA or Rehab Act.[16]

**C. Plaintiff Elia Has Failed to Allege Nominal Damages**

---

15 Punitive damages are not available for claims under Title II and the Rehab Act. (*See* Barnes v. Gorman, 536 U.S. 181 [2002]).

16 Commissioner Sunshine cannot be held liable for monetary damages in either an individual or official capacity under either the ADA or Rehab Act. (*Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 449-50 [E.D.N.Y. 2002]).

Generally accepted contract remedies are recognized as appropriate to redress violations of the Rehab Act. (*See Cummings v. Premier Rehab Keller*, P.L.L.C., 142 S. Ct. 1562, 1578 [2022]). Nominal damages are a generally accepted remedy in contract actions and are appropriate where a plaintiff has established he or she has incurred an injury due to a breach of contract or duty and, plaintiff cannot establish actual damages. (*Fantasia v. Montefiore New Rochelle*, 2022 US Dist LEXIS 107935, at *4 – *8, [SDNY June 16, 2022, No. 19 CV 11054 (VB)], *citing* Restatement [Second] of Contracts § 346 [2]).

Plaintiffs fails to state a claim and establish that Defendants were responsible for the limits placed on Elia's ability to deliberate in the grand jury or that Defendants caused any alleged injury to necessitate the award of nominal damages. Indeed, the record indicates that the Elia, Justice Chu, and the prosecutor, explored the possibility of providing Elia a reasonable accommodation that would allow him to deliberate on indictments with visual evidence. The judge ultimately determined the only reasonable accommodation was to limit the types of cases Elia can deliberate and vote on. Even if it were true that UCS had no reasonable accommodation policy or available aids, which it is not, Elia was dismissed from service per his request, after Justice Chu made her ruling. Defendants did not cause any alleged injury to Elia, and he is not entitled to nominal damages, or any other type of damages requested in this matter.

## VI. PLAINTIFFS ARE NOT ENTITLED TO THE DECLARATORY OR INJUNCTIVE RELIEF SOUGHT

Plaintiffs seek both a declaratory judgment that Defendants are in violation of both the ADA and the Rehab Act and injunctive relief in the form of an order directing Defendants to "comply with" the ADA and Rehab Act and to alter jury service programs in order to better serve

individuals with disabilities. Plaintiffs' claims for such relief should be denied because they do not have standing to obtain such relief and such claims are arguably moot.

As a preliminary matter, UCS and Commissioner Sunshine cannot compel a judge to grant a reasonable accommodation, much less require a judge to attend a specific training. Only a judge or justice of the trial court can determine whether a juror is qualified to be seated and deliberate on a case, taking into consideration the rights of the parties in the underlying action.

Moreover, Plaintiffs' allegations that UCS lacks a reasonable accommodation policy or that UCS courts do not have sufficient aids to assist individuals who are blind is false and a red herring—there is no relief available herein that would have changed the outcome, specifically because Elia stated that the only suitable accommodation for him was for another individual to describe the visual evidence to him. Admittedly, he determined that assistive technology relying on AI was not as reliable nor secure based on the technology's use of the internet. Ex.1

Assuming, arguendo, that plaintiff was denied "the opportunity to participate in or benefit from [UCS's] services, programs, or activities," the available relief must be "tailor[ed] . . . to fit the nature and extent of the violation." (*See* D*isabled in Action v. Board of Elections in City of New York*¸752 F.3d 189, 198 [2d Cir. 2014] [internal citation omitted]). Although grand jurors meet and confer in UCS courthouses, grand jury service is a program under the jurisdiction of the District Attorney. (CPL §§ 190.25 [4] [a], [6]). It follows then, that Plaintiffs are not entitled to injunctive relief requiring UCS and Commissioner Sunshine (or other court clerks, commissioners of jurors, and county clerks) to train judges and non-judicial staff, or provide aids to grand jurors, or to compel a District Attorney to provide the same training and accommodations. This is particularly applicable here where there are no allegations, much less evidence, that individuals who are blind are systemically being denied the opportunity to serve as grand jurors or jurors. Any

injunctive relief that alters how UCS and Commissioner Sunshine provide reasonable accommodations to the public generally would not be tailored to fit the violations alleged herein.

Similarly, Elia is not entitled to the relief sought where his claim is now moot, because the requested relief "could provide no legally cognizable benefit". (*See Doherty v. Bice*, 101 F.4th at 172-73 [internal citation omitted]). As argued above, the relief sought by Elia will not redress his claims or provide him any relief other than speculative relief. Plaintiff's request for a declaratory judgment and an order directing Defendants to "comply" with the ADA and Rehab Act will not affect Elia and therefore any exception to the mootness doctrine does not apply. (*Id.* at 173).

Accordingly, Plaintiffs are not entitled to injunctive relief or a declaratory judgment (or damages) and therefore their claims under the ADA and Rehab Act should be dismissed.

## VII. COMMISSIONER SUNSHINE IS NOT A PROPER PARTY TO THIS ACTION.

Plaintiffs allege Defendants failed to accommodate him once he was empaneled as a grand juror. However, Commissioner Sunshine's involvement with Elia ceased once he was sworn and empaneled. As described above, Commissioner Sunshine's control over prospective jurors is limited to summoning their appearance and conducting, via her team, basic pre-qualification screening, during which Commissioner Sunshine's staff provided accommodations, (space for Elia's service animal), and assistance filling out the questionnaire provided to all summoned jurors. Once Elia was sworn in to serve, he was no longer under the purview of Commissioner Sunshine. Instead, any request for accommodation regarding the grand jury would be appropriately made to KCDA and/or the justice presiding over grand jury matters. To the extent an accommodation necessitates use of equipment available in the courthouse, the juror, prosecutor and /or judge can make a request to the Chief Clerk of Kings County Supreme Court, Criminal Matters to assist. Here, Elia's request was made to ADA Kim and Justice Chu. His request was denied based on the

judge's interpretation of the law. Plaintiffs fail to allege any facts or law concerning Commissioner Sunshine, much less explain how their claims for relief are connected to Sunshine's actions or inactions. Plaintiffs do not allege that Commissioner Sunshine can mandate judicial training or that she was involved in the decision to bar Elia from deliberating as a grand juror. Based on the foregoing, Commissioner Sunshine is not a proper party[17].

## CONCLUSION

For the foregoing reasons, the defendants, the New York State Unified Court System and Commissioner Sunshine respectfully request that the Court grant their motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 1, 2025

Respectfully submitted,

DAVID NOCENTI
Counsel
Office of Court Administration
Attorney for Defendants
By:
/s/
MICHAEL J. SIUDZINSKI
NIAA C. DANIELS
Assistant Deputies Counsel
Of Counsel
25 Beaver Street, 10th Fl.
New York, New York 10004
(212) 428-2150

[17] To the extent plaintiff can obtain injunctive or declaratory relief, such relief would be provided by UCS and therefore Commissioner Sunshine is not a necessary party. (*See Harris v. Mills*, 572 F.3d 66, 72 [2d Cir. 2009]). Clearly, UCS is the "real party in interest is the government entity", ( *id.*, *quoting*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 [2d Cir. 2003]), because the Court may "accord complete relief among existing parties" without County Commissioner Sunshine. (Fed. R. Civ. P. 19 [a] [1] [A]; *see also, e.g., Gallagher v. NYS Bd. of Elec*., 477 F.Supp.3d 19, 39 [S.D.N.Y. 2020]). Indeed, this Court has dismissed ADA and Rehab Act claims against state officials in their official capacity as redundant because the real party in interest is the State. (*See Fox v. State University of New York*, 497 F. Supp. 2d 446, 461 [E.D.N.Y. 2007], ["b. Title II of the ADA", finding that it is inappropriate and redundant to allow ADA and Rehab Act official capacity litigation when plaintiffs have sued a government entity directly]).